FERNANDO VALLEDOR, Plaintiff and Appellee, *v.* JUAN DIEZ-ROSADO and MIGUEL NOGUERAS, Defendants. DIEZ-ROSADO, Appellant.

No. 3449. Argued March 13, 1925.—Decided February 3, 1926.

M. *Guzmán Texidor* for the appellant.   C. *Domínguez Rubio* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Juan Diez Rosado, plaintiff in a personal action, offered $200 for certain real estate sold under execution issued pursuant to a judgment obtained by such plaintiff.

The marshal's certificate contains the following recital:

"The offer of the plaintiff, at his request, was applied to his credit of $560.60, plus interest from May 17, 1922, the judgment of the court of June 28, 1922, being thus reduced and executed in this sole respect.   And there being no higher bid than that made by plaintiff Juan Diez Rosado, I awarded to him publicly and in a loud voice the foregoing property subject to the debt of Fernando Valledor which encumbers the property in legal form.   The plaintiff and his attorney were personally present at this act."

Later Valledor brought suit against Juan Diez Rosado for recovery of the amount of his claim above mentioned, which was secured by a mortgage.

The subsequent action was likewise purely personal. There was no prayer for foreclosure and no decree for a foreclosure of the lien.   Plaintiff's own theory of the case further appears from a præcipe for judgment by default filed with the clerk, wherein it is pointed out that—

"being a suit to recover money due under an obligation set up in a public document the entry of a judgment against the defendants as prayed for would be proper."

Nevertheless, the clerk declined to enter judgment and later defendants appeared and answered.

At the trial after plaintiff had rested the district judge overruled a motion for nonsuit and thereafter rendered judgment for plaintiff—

"directing the defendant Juan Diez Rosado to pay the plaintiff Fernando Valledor the sum of $938.40 together with accrued and unpaid interest on said amount at the rate of twelve per cent per annum, without costs. And further providing that this judgment shall be executed by the attachment and sale of the mortgaged property, and in case the amount produced by the sale should be insufficient to cover the amount of the judgment, the plaintiff shall recover the balance from any property belonging to the said defendant."

The mere seizure and sale of mortgaged property under execution to satisfy a personal judgment but without any attempt upon the part of either plaintiff or the court to foreclose the mortgage lien cannot be sustained upon the theory of such foreclosure. See *Rosales* v. *District Court of San Juan*, 33 P.R.R. 305.

The language of the marshal's certificate does not necessarily mean that the purchaser assumed the debt of his debtor, the defendant, owing to Valledor. The words used are equally consistent with an intention to convey whatever right, title and interest the debtor had in the mortgaged premises subject and without prejudice to the mortgage lien.

Given the situation existing at the time of the sale, such a conveyance would have followed in the usual and normal course of procedure. There was no obligation resting upon the purchaser and apparently no motive or incentive that could have prompted him to assume any personal responsibility. In the face of such circumstances the more or less vague and ambiguous phraseology employed by the marshal cannot suffice without more to create any new and additional liability.

The judgment appealed from must be reversed.

DISSENTING OPINION OF MR. JUSTICE FRANCO SOTO.

Articles 128 of the Mortgage Law and 169 *et seq.* of the Regulations prescribe the procedure to be followed for the collection of mortgage debts. The proceeding is summary and was exclusive for such cases until the Code of Civil

Procedure of 1904 was interpreted in the sense that mortgagees could recover on their mortgages under either the special procedure of the Mortgage Law or the ordinary procedure of the new Code of Civil Procedure. In spite of this option it seems to be deducible from the doctrine laid down by the court in this case and the authority cited that if the ordinary action is elected the formalities and procedure of the summary action must be followed. This is the reason for my dissent. If it were so, I see no advantage in electing the ordinary proceeding and it would have been better not to allow the use of the ordinary action, or at least the profession should have been informed of what should be done in such cases. As the consequences may be of some importance, since it would not be venturesome to say that for many years a large number of mortgage debts have been collected by the ordinary proceeding and if the new doctrine should prevail all of the forced sales of real properties and the subsequent transactions growing out of them would be open to collateral attack, and the disorder that such a situation would produce in the territorial credit and in business would not be flattering and much less would it encourage the stability of transactions.

I do not believe that in the present case, in which the ordinary procedure has been followed, the manner in which the action was brought and the form in which the judgment was rendered have changed the nature of the real foreclosure action within the ordinary proceeding. The complaint refers to a mortgage, alleges how it was created, its record in the registry of property and gives a description of the mortgaged property, which passed to the defendant by reason of his having acquired it with the encumbrance at an execution sale in another proceeding.

The judgment is not only that the defendant pay the sum alleged in the complaint to be secured by the mortgage, but directs that the judgment be satisfied by a sale of the mort-

gaged property. I do not see that this differs much from what is done in the special proceeding prescribed by articles 170 and 172 of the Regulations for the Execution of the Mortgage Law when an order is made to the effect that the mortgagor, if he is in possession of the property, or the third person to whom it may have been transferred, *shall make payment of the amount claimed, with the costs, warning them that upon their failure to do so the property mortgaged will be sold at auction,* these being the terms of the said article 170. Italics volunteered.

Of course, if the judgment had not directed that the amount claimed should be satisfied out of the mortgaged property, then it would seem to be a personal action to recover money notwithstanding the terms of the complaint, but such is not the case.

On the other hand, I want to insist that I do not see what influence the certificate of sale issued by the marshal may have on the point discussed. Aside from the fact that as a matter of evidence it appears from the certificate that the marshal sold the property with the responsibility of the mortgage lien on it claimed by the plaintiff, it involving the nature of a mortgage whose validity depends not only on its creation, but on its record in the registry of property, which is notice to all, the right of the plaintiff could not be destroyed or affected by what the marshal might state in the certificate of sale, because as a matter of law its validity depended on terms of the record appearing in the registry. The marshal might have remained silent and yet the lien in favor of the plaintiff would remain valid and existing if it so appeared in the registry.

Finally I will say that the judgment should have been modified only in the particular that says "if the proceeds of the sale are insufficient to cover the amount of the judgment, the plaintiff shall recover the balance out of any property of the defendant," because, he being a third person, his

liability should be limited to the value of the encumbered property.

For the foregoing reasons the judgment appealed from should have been affirmed with the modification indicated.